

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| CLAYTON SHELDON CREEK, | CIV 08-3009 |
| Petitioner, | OPINION AND ORDER GRANTING APPLICATION TO PROCEED, DENYING PETITION FOR WRIT OF HABEAS CORPUS, AND DENYING CERTIFICATE OF APPEALABILITY |
| -vs- | |
| DOUGLAS WEBER, Warden, South State Penitentiary, | |
| Respondent. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Petitioner pleaded guilty to second degree rape in the Seventh Judicial District, Pennington County, South Dakota, and was sentenced on November 30, 2000, to 15 years in the state penitentiary. Petitioner did not timely appeal his conviction and sentence to the South Dakota Supreme Court.[1] Petitioner filed a petition for a writ of habeas corpus in Pennington County, challenging his rape conviction. The petition for habeas relief was denied on January 7, 2004.

Petitioner submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking to attack his rape conviction, along with a prisoner trust account report filed in accordance with the Prison Litigation Reform Act. He did not submit the statutory filing fee. He apparently wishes to proceed without the prepayment of fees pursuant to 28 U.S.C. § 1915. Petitioner has made the requisite showing under 28 U.S.C. § 1915(a). Accordingly, he will be allowed to proceed without the prepayment of fees. Nonetheless, pursuant to 28 U.S.C. § 1915(b)(1), petitioner is required to pay the statutory filing fee of $5.00 for this action. *See* 28 U.S.C. § 1914(a).

---

[1] The South Dakota Supreme Court sanctioned petitioner on February 2, 2004, for repeated filing of frivolous pleadings. The state courts are not required to accept further filings from petitioner without prior court approval.

Petitioner also filed a motion to consolidate this collateral attack of his 2000 Pennington County rape conviction with the pending collateral attack of his 2004 Minnehaha County forgery convictions, CIV 08-3003. Consolidation is not required nor is it appropriate in this case.

Petitioner contends that the rape offense occurred in Indian country and, therefore, should and could have been prosecuted only in federal court. I have conducted a preliminary review of the petition as required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.

Petitioner has filed a multitude of prior actions under 28 U.S.C. § 2254, all challenging his 2000 state court rape conviction. Three of those actions, 02-3001, 02-5078, and 05-3023, were dismissed without prejudice for failure to exhaust state court habeas remedies. One of those actions, 04-4021, was dismissed upon the merits after consideration of Judge Trimble's order denying the state court habeas petition. Two of those actions, 05-5079 and 05-3028, were dismissed as second or successive habeas petitions. Rule 9 of the Rules Governing Section 2254 Cases in The United States District Courts provides:

> Before presenting a second or successive petition, the petitioner must obtain an order from the appropriate court of appeals authorizing the district court to consider the petition as required by 28 U.S.C. § 2244(b)(3) and (4).

Petitioner has not obtained an order from the United States Court of Appeals authorizing a successive petition.

Even if petitioner was not otherwise barred from challenging his 2000 state court rape conviction, his petition should be dismissed on the merits. Petitioner states that the offense occurred at the Lakota Community Homes in Rapid City, South Dakota. He contends that the Lakota Community Homes are in Indian country, that he is an Indian, that the victim was an Indian and, therefore, the State of South Dakota had no jurisdiction to prosecute him.

18 U.S.C. § 1153 gives federal courts exclusive jurisdiction over certain crimes, including sexual abuse, committed by an Indian in Indian country. Indian country is defined as:

> (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the

>United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

18 U.S.C. § 1151. The issue here is whether the Lakota Community Homes are a dependent Indian community.

"The early case of United States v. McGowan, 302 U.S. 535, 539, 58 S.Ct. 286, 288, 82 L.Ed. 410 (1938), defined a dependent Indian community as one in which the United States retained 'title to the lands which it permits the Indians to occupy' and 'authority to enact regulations and protective laws respecting this territory.'" Weddell v. Meierhenry, 636 F.2d 211, 212 (8th Cir. 1980). Whether a particular geographic area is a dependent Indian community has, in the Eighth Circuit, depended upon consideration of four factors:

>(1) whether the United States has retained "title to the lands which it permits the Indians to occupy" and "authority to enact regulations and protective laws respecting this territory;" (2) "the nature of the area in question, the relationship of the inhabitants of the area to Indian tribes and to the federal government, and the established practice of government agencies toward the area;" (3) whether there is "an element of cohesiveness . . . manifested either by economic pursuits in the area, common interests, or needs of the inhabitants as supplied by that locality;" and (4) "whether such lands have been set apart for the use, occupancy and protection of dependent Indian peoples."

United States v. State of South Dakota, 665 F.2d 837, 839 (8th Cir. 1981) (internal citations omitted); United States v. Azure, 801 F.2d 336, 339 (8th Cir. 1986); and United States v. Driver, 945 F.2d 1410, 1415 (8th Cir. 1991). The United States Supreme Court has more recently set forth the law to be applied.

>Since 18 U.S.C. § 1151 was enacted in 1948, we have not had an occasion to interpret the term "dependent Indian communities." We now hold that it refers to a limited category of Indian lands that are neither reservations nor allotments, and that satisfy two requirements - first, they must have been set aside by the Federal Government for the use of the Indians as Indian land; second, they must be under federal superintendence.

Alaska v. Native Village of Venetie Tribal Government, 522 U.S. 520, 527, 118 S.Ct. 948, 953, 140 L.Ed.2d 30 (1998).

> The federal set-aside requirement ensures that the land in question is occupied by an "Indian community"; the federal superintendence requirement guarantees that the Indian community is sufficiently "dependent" on the Federal Government that the Federal Government and the Indians involved, rather than the States, are to exercise primary jurisdiction over the land in question.

Alaska v. Native Village, 522 U.S. at 531, 118 S.Ct. at 955.

The Lakota Community Homes do not satisfy either of these requirements. I take judicial notice of the public records of Pennington County which show that the Lakota Community Homes are owned by Lakota Community Homes, Inc. I also take judicial notice of the public records of the Secretary of State which show that Lakota Community Homes, Inc., is a Maryland non-profit corporation authorized to do business in South Dakota. The Lakota Community Homes are a federally subsidized housing development in Rapid City, South Dakota, which are rented to persons with low incomes. Bad Wound v. Lakota Community Homes, Inc., 1998 SD 25. The housing development is neither "validly set apart for the use of the Indians as such," nor is that development under the superintendence of the Federal Government. The facts that the housing development may have been originally financed with a federally subsidized mortgage and that renters currently receive rental assistance through the federal government does not make the housing project one that is set aside by the federal government for the use of Indians.

The State of South Dakota validly exercised jurisdiction in prosecuting petitioner for rape committed in the Lakota Community Homes housing development in the City of Rapid City, South Dakota. The petition for a writ of habeas corpus should be denied. Pursuant to 28 U.S.C. § 2253, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Petitioner did not and has not made a substantial showing of the denial of a constitutional right.

Now, therefore,

IT IS ORDERED:

1. Petitioner's application to proceed without the prepayment of fees is granted. Petitioner shall pay, through the Clerk of Courts in Pierre, South Dakota, the $5.00 statutory filing fee for the above-captioned habeas action, which is hereby assessed, pursuant to 28 U.S.C. § 1915(b)(1).

2. Petitioner's motion to consolidate, Doc. 3, is denied.

3. Petitioner's petition for a writ of habeas corpus is denied.

IT IS HEREBY CERTIFIED that there does not exist probable cause of an appealable issue with respect to the Court's order denying petitioner's § 2254 petition. This in no way hampers the petitioner's ability to request issuance of the certificate by a circuit judge pursuant to Fed. R. App. P. 22.

Dated this 9th day of June, 2008.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, Clerk

BY: _____
DEPUTY
(SEAL)